UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMANUEL L. SHOULDERS, | ) | Case No. 3:06CV2913 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| ROB JEFFREYS, Warden, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |

On December 4, 2006, Emanuel Shoulders, ("Petitioner"), *pro se*, filed a petition for

writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner

seeks relief from a judgment of conviction entered by the Hancock County, Ohio Court of

Common Pleas for one count of possession of crack cocaine.  *Id*. at 2-3.  On March 5, 2007,

Petitioner filed a memorandum in support of his petition.  ECF Dkt. #8.  On June 6,

2007,Warden Rob Jeffreys ("Respondent") filed a return of writ.  ECF Dkt. #12.  The case was

referred to the undersigned to issue a report and recommendation.  ECF Dkt. #6.  For the

following reasons, the undersigned recommends that the Court dismiss the instant petition with

prejudice.

I.      **FACTUAL BACKGROUND**

The Third District Court of Appeals of Ohio set forth the facts of this case on direct

appeal.  These binding factual findings "shall be presumed to be correct", and Petitioner has

"the burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), *cert. denie*d, 119

S.Ct. 2403 (1999). As set forth by the Eighth District Court of Appeals, the facts are:

In May of 2004, Police Patrolman Byron Deeter was working the midnight shift
with the Patrol Division of the Findlay Police Department. At the beginning of his shift,
Patrolman Deeter received information from Detective Chris Huber of the Metrich Drug
Task Force that a gray Ford with Seneca County license plates had been seen in Findlay,
Ohio with two black males inside the vehicle. Detective Huber also informed Patrolman
Deeter that these two men were reported to have been selling crack cocaine and were
possibly in possession of firearms. Finally, Detective Huber informed Patrolman Deeter
that the two men may have been associating with Mary Murphy, who Patrolman Deeter
knew from prior complaints as a seller and user of crack cocaine, and who Patrolman
Deeter knew resided in the Argyle Building in Findlay, Ohio.

While responding to another police call the night of the traffic stop, Patrolman
Deeter observed a gray Ford with two black males occupying the vehicle. Patrolman
Deeter ran the gray Ford's license plate number and found that the license plates were
registered in Seneca County.

Later that night, after completing the police call, Patrolman Deeter observed the
gray Ford unoccupied and parked behind the Argyle Building. Patrolman Deeter then
began surveillance on the vehicle. While on surveillance, Patrolman Deeter observed
three people leave the Argyle Building, enter the gray Ford with Seneca County license
plates, and leave the parking lot.

After leaving the parking lot, the gray Ford approached South Cory Street, a
one-way street for northbound traffic only, from an alley. After signaling left, the gray
Ford began to turn left, or the wrong way, onto South Cory Street. The gray Ford then
turned right and headed northbound, the proper direction, on the one-way street. Based
upon the information from Detective Huber and the observed travel pattern of the gray
Ford, Patrolman Deeter initiated a traffic stop.

After stopping the vehicle, Patrolman Deeter found Shoulders operating the
vehicle. Patrolman Deeter then removed Shoulders from the gray Ford and searched him
for suspected firearms. After being removed from the vehicle, Shoulders orally
consented to a search of the gray Ford, during which crack cocaine was found.
Shoulders claimed the crack cocaine belonged to Mary Murphy, another passenger in
the motor vehicle. Later during the search, Sergeant Young of the Findlay Police
Department found additional crack cocaine on the person of Shoulders after Shoulders
attempted to flee the scene of the motor vehicle stop.

In May of 2004, a Hancock County Grand Jury indicted Shoulders for one count
of possession of cocaine in violation of R.C. 2925.11(A), a felony of the third degree. In

-2-

October of 2004, Shoulders moved to suppress the State's evidence, arguing that the evidence was illegally obtained through a warrantless search and seizure. Specifically, Shoulders asserted that there was no probable cause or reasonable suspicion for the initial stop and detention of Shoulders.

In November of 2004, a hearing was held on Shoulders' motion to suppress. At the hearing, Patrolman Deeter was the only person who testified to the above events. Following the hearing, the trial court found that Patrolman Deeter had a reasonable suspicion that Shoulders, the person who was stopped, was involved in illegal activity, including the commencement of a traffic offense and that Shoulders gave Patrolman Deeter consent to search the vehicle. As a result, the trial court denied Shoulders' motion to suppress.

In January of 2005, Shoulders withdrew his plea of not guilty and plead no contest to the sole count of the indictment. The trial court went on to sentence Shoulders upon his conviction.

ECF Dkt. #12, Ex. 12 at 2-5.

## II.     PROCEDURAL HISTORY

### A.     STATE TRIAL COURT

May 13, 2004, the Hancock County Grand Jury issued an indictment charging Petitioner with one count of possession of crack cocaine in violation of Ohio Revised Code §2925.11(A). ECF Dkt. #12, Ex. 1.

On October 15, 2004, Petitioner filed a motion to suppress evidence in the form of crack cocaine found on his person and in his vehicle and any testimony relating to the crack cocaine. ECF Dkt. #12, Ex. 2.  Petitioner filed a memorandum in support of the motion and argued that the officers who arrested him conducted an unconstitutional search and seizure because they did not have a reasonable suspicion to believe Petitioner had committed a traffic law violation.  *Id.* at Ex. 2 at 3-5.  Petitioner reasoned that Officer Deeter's report stated that Petitioner made a right turn onto South Cory Street.  *Id.* at Ex. 2 at 3.  Since Officer Deeter used the term "onto," Petitioner argued that he could not have entered the South Cory Street from the alley during his

-3-

initial attempt to turn the wrong way on the one-way street.  *Id*.  Therefore, Petitioner concluded, he did not commit a traffic offense, and Officer Deeter had no reasonable suspicion to effect a traffic stop.  *Id*.  at Ex. 2 at 4.

On November 4, 2004, the Court of Common Pleas held an evidentiary hearing to determine if a Fourth Amendment violation had occurred.  ECF Dkt. #12, Ex. 3, 25. Petitioner's attorney made an opening statement, and the prosecutor waived his opportunity to make an opening statement.  ECF Dkt. #12, Ex. 25 at 5-6.  At the hearing, Officer Deeter testified that Detective Huber informed him that a gray Ford with Seneca County license plates was in town and two African American males were selling crack cocaine from the vehicle.  *Id*. at 9.  Detective Huber told Officer Deeter that the suspects had been associating with Mary Murphy, who Officer Deeter knew to be a crack cocaine dealer.  *Id*.  at 9-10.  Officer Deeter testified that he had identified the gray Ford and had seen Petitioner, Mary Murphy, and another African American male leave the Argyle Apartments, where Mary Murphy lived, and enter the Ford.  *Id*. at 11-13.  Officer Deeter watched the Ford turn into an alley and approach South Cory Street, a one-way street.  *Id*. at 14-15.  He observed approximately two feet of Petitioner's vehicle enter South Cory Street and the tires were turned to the left, but only a right turn was legal.  *Id*. at 14-15.  Officer Deeter testified that he stopped the vehicle and gave Petitioner a warning, but he did not issue a written citation.  *Id*. at 28.  On cross examination, Petitioner's attorney asked his own questions as well as questions Petitioner had prepared.  ECF Dkt. #12, Ex. 25 at 30-57.  Petitioner moved Officer Deeter's written incident report into evidence, and the court accepted it without objection.  *Id*. at 58.  Petitioner's attorney and the prosecutor made closing arguments.  *Id*. at 58-67.

On December 13, 2004, the Court of Common Pleas denied Petitioner's motion to suppress evidence.  Ecf Dkt. #12, Ex. 3.  In a memorandum opinion, the court outlined its factual findings and legal conclusions.  *Id*.  The court found that Officer Deeter had observed Petitioner initiating an improper turn on a one-way street and that Officer Deeter effected a traffic stop based on his observations and on information Detective Huber had provided.  *Id*. at 3.  Following the stop, Petitioner consented to a search of his vehicle where crack cocaine was found.  *Id*.  The court also found that Sergeant David Young found crack cocaine on Petitioner's person after Petitioner attempted to flee the scene of the traffic stop.  *Id*. at 4.  Based upon these facts, federal constitutional law, and Ohio law, the court concluded that Officer Deeter had a reasonable suspicion that Petitioner was involved in illegal activity, including a traffic offense.  *Id*. at 11-12.

On January 19, 2005, Petitioner signed a plea of no contest to the indictment.  ECF Dkt. #12, Ex. 4.  Petitioner waived his rights to a trial, to a compulsory process for calling witnesses in his defense, and to have the prosecutor prove guilt beyond a reasonable doubt.  *Id*. at 3.  On January 19, 2005, the court held a hearing where Petitioner entered a plea of no contest, the court found him guilty, and sentenced him to three years of imprisonment, a three year driver's license suspension, and a term of post release control to be determined by the Ohio Parole Board.  ECF Dkt. #12, Ex. 5 at 3, 5.

**B.**     **DIRECT APPEAL**

On February 18, 2005, Petitioner, *pro se*, filed a notice of appeal from the Court of Common Pleas judgment of conviction.  ECF Dkt. #12, Ex. 6c at 12.  On May 3, 2005, Petitioner's attorney filed another notice of appeal.  *Id*. at 14.  On May 5, 2005, Petitioner,

through counsel, filed an appeal in the Third District of the Ohio Court of Appeals alleging:

> In an abuse of its discretion, the trial court reversibly erred by overruling Defendant's motion to suppress, in violation of Defendant-Appellant's fundamental substantial constitutional right to be secure from warrantless, unreasonable searches and seizures, under the Fourth and Fourteenth Amendments to the United States Constitution, and under Section 14, Article I of the Ohio Constitution, and also in violation of Defendant-Appellant's fundamental substantial right to due process of law, under the Fourteenth Amendment to the United States Constitution.

ECF Dkt. #12, Ex. 6a at 5.  Petitioner argued that Officer Deeter's report never indicates that he apprised Petitioner that he had been stopped for a traffic violation.  *Id*. at 2, 8.  Petitioner further argued that Officer Deeter did not cite him for any traffic violations.  *Id*. at 3, 8.  Petitioner contended that Officer Deeter could not articulate "any violation of the motor traffic laws."  *Id*. at 9.[1]  Therefore, Petitioner argued, Officer Deeter did not have a reasonable suspicion based upon articulable facts to believe a traffic law violation had occurred.  *Id*. at 9.

On July 10, 2005, Petitioner, acting *pro se*, filed a supplemental brief in support of his attorney's appellate brief.  ECF Dkt. #12, Ex. 8.  On August 4, 2005, the Ohio Court of Appeals denied Petitioner's motion to file a supplemental brief because he was being represented by counsel throughout his appeal.  ECF Dkt. #12, Ex. 9.  On August 15, 2005, Petitioner, acting *pro se*, filed a "*Pro Se* Reconsideration request pursuant to App. R. 26(A). For the Supplemental Pro Se Brief of the appellant."  ECF Dkt. #12, Ex. 10.  On September 1, 2005, the Ohio Court of Appeals denied Petitioner's motion for reconsideration, again, because he was represented by counsel throughout the appeal.  ECF Dkt. #12, Ex. 11.

---

[1]  Officer Deeter's testimony was: "I don't recall the section off the top of my head, I would have to review a book to."  ECF Dkt. #12, Ex. 25 at 49.

On September 14, 2005, the Ohio Court of Appeals issued an opinion and order denying Petitioner's appeal of the trial court's conviction. ECF Dkt. #12, Ex. 12. Pursuant to Ohio law, the Court of Appeals accepted the trial court's factual findings as true and reviewed the trial court's application of the law *de novo*. *Id*. at 5-6. The Ohio Court of Appeals concluded that turning the wrong way down a one-way street without justification implicates at least one section of the Ohio Revised Code ("O.R.C.").[2] *Id*. at 8. The court also stated that Sections 305.12 ("One-way streets and alleys" and 331.30(a) ("One -way streets and rotary traffic islands") of the Codified Ordinances of the City of Findlay Ohio are implicated because they are analogous to O.R.C. §4511.32. *Id*. The Ohio Court of Appeals determined that the trial court's finding that Petitioner had driven his vehicle the wrong way on a one-way street was entitled to deference because the finding was based upon competent, credible evidence. *Id*. The Ohio Court of Appeals further concluded that Officer Deeter had articulated facts upon which one could reasonably suspect that Petitioner had violated one of the above laws. *Id*. at 9. Therefore, the court concluded that Petitioner's constitutional rights had not been violated. *Id*.

## C. **SUPREME COURT OF OHIO**

On October 26, 2005, Petitioner, *pro se*, filed a timely notice of appeal in the Supreme Court of Ohio. ECF Dkt. #12, Ex. 13. In his memorandum in support of jurisdiction, Petitioner presented one proposition of law:

---

[2]     The Court cited Ohio Revised Code §4511.32 ("One-way highways and rotary traffic islands"): "The department of transportation may designate any highway or any separate roadway under its jurisdiction for one-way traffic and shall erect appropriate signs giving notice thereof. Upon a roadway designated and posted with signs for one-way traffic a vehicle shall be driven only in the direction designated.

> Proposition of Law No. I: It is imperative that law enforcement officers adhere to and follow the search and seizure standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968); in which the Supreme Court held that a police officer may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited [emphasis] pat-down frisk for weapons, *Id.* at 22-24, in order to protect the public at large from intrusion violations of the Fourth Amendment of the United States Constitution.

ECF Dkt. #12, Ex. 13 at 5.  On February 8, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #12, Ex. 14.

**D.**      **STATE PETITION FOR POST CONVICTION RELIEF**

On October 5, 2005, Petitioner, *pro se*, filed a motion in the Hancock County Court of Common Pleas seeking an extension of time to file a petition for post conviction relief.  ECF Dkt. #15.  On November 17, 2005, the court denied the motion.  ECF Dkt. #12, Ex. 16.

**E.**      **APPLICATION TO REOPEN APPEAL PURSUANT TO OHIO RULE OF APPELLATE PROCEDURE 26(B)**

On November 18, 2005, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Ohio Rule of Appellate Procedure 26(B) ("Rule 26(B) Motion").  ECF Dkt. #12, Ex. 17.  Petitioner alleged that his appellate counsel was ineffective because he "failed to argue the stronger Fourth Amendment claim of the warrantless search and seizure, rather than whether Findlay Police Patrolman Deeter had probable cause to make a traffic stop."  *Id*. at 4.

On December 29, 2005, the Ohio Court of Appeals denied the application because Petitioner had failed to show a genuine issue of the ineffective assistance of appellate counsel. ECF Dkt. #12, Ex. 19.

**F.**      **MOTION FOR JUDICIAL RELEASE**

On June 5, 2006, Petitioner filed a motion in the Court of Common Pleas for judicial

release pursuant to O.R.C. §2929.25. ECF Dkt. #12, Ex. 21. Defendant asked to be released because he had demonstrated remorse and a willingness to change his lifestyle. *Id*. at 2-3. Petitioner stated that he had attempted to obtain a G.E.D. and that he had been attending anger management classes. *Id*.

On June 6, 2006, the court denied the motion. ECF Dkt. #12, Ex. 22, 23. On June 19, 2006, Petitioner filed a motion for reconsideration of judicial release. ECF Dkt. #12, Ex. 24. On June 26, 2006, the court denied the motion. *Id*.

### G. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On November 16, 2006, Petitioner filed the instant petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner raises the following grounds for relief:

> **GROUND ONE**: Privacy rights to the U.S. Fourth Amendment
> **Supporting Facts**: Officer Sgt. Sean D. Young's and Dale Cupp's of the Findlay, Ohio Police Department, actions should be checked, for they made Plaintiff walk up and down the sidewalk on a fishing expedition for evidence of a crime after the Plaintiff had been searched for weapons and the Plaintiff made it known he wanted to leave, but was seized and forced to go through this expedition.
>
> **GROUND TWO**: Being that Officer Sgt. Sean D. Young and Dale Cupp clearly detained Plaintiff; this must have been an unlawful arrest.
> **Supporting Facts**: Plaintiff, prior to being placed in the patrol car, was told he was not under arrest by Officer Byron Deeter. Plaintiff clearly made it known he wanted to leave, but was handcuffed, searched and patted-down and placed in the patrol car and then pulled out of the patrol car and was immediately made to walk up and down the sidewalk and was forced to submit to another search after this fishing expedition.
>
> **GROUND THREE**: Attorney Gene P. Murray was a violation to my Sixth Amendment right to the U.S. Constitution. [sic]
> **Supporting Facts**: I mailed several letters to this attorney urging him to pursue my right to privacy claim in the Third District Court of Appeals of Hancock County so I could get out for I'm not supposed to be in jail

according to law. He did nothing. I sent several motions but was ignored.

*Id.* at 5-6.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). It is unnecessary to discuss these procedural requirements because they are not at issue in the case at bar. *See* ECF Dkt. #1, 8, 12.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 4, 2006, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.; see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.      Decisions of lower federal courts may not be considered.

-11-

B.      Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.      The state court decision may be overturned only if:

      1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' or; The Supreme Court precedent must exist at the time of petitioner's direct appeal.

      2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

      3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.  ANALYSIS

Based upon the applicable standards of review, the undersigned recommends that the Court dismiss the instant petition, with prejudice, for the following reasons.

**A.**    **GROUNDS ONE AND TWO ARE NOT COGNIZABLE IN A 28 U.S.C. § 2254 PETITION**

In Grounds One and Two of the instant petition, Petitioner asserts that the trial court's ruling denied his Fourth Amendment right to be free from unreasonable searches and seizures. ECF Dkt. #1 at 5; ECF Dkt. #8 at 3. Petitioner concedes that the police properly effected a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). ECF Dkt. #8 at 3. Petitioner argues that the police exceeded the scope of a *Terry* stop by looking for evidence of a crime after determining Petitioner did not have a weapon. *Id.* at 3-6. Respondent asserts that this ground for relief is foreclosed pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), which bars federal habeas corpus relief on grounds of an unconstitutional search and seizure when the state prisoner has been provided with a full and fair opportunity to litigate the Fourth Amendment claim. ECF Dkt. #12 at 8-10. Respondent states that Petitioner was given a full and fair opportunity at every state level to litigate his Fourth Amendment claims because the trial court held an evidentiary hearing, the court of appeals reviewed the trial court's findings, and Petitioner filed an appeal in the Supreme Court of Ohio. *Id.*

**(i)**    **The Supreme Court has held that Fourth Amendment claims are not cognizable in habeas corpus proceedings unless the petitioner has been denied a full and fair opportunity to litigate his claim.**

In *Stone v. Powell,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. The Supreme Court indicated that the purpose of a writ of habeas corpus is to ensure prisoners are not held on

-14-

convictions when there has been a deprivation of a constitutional right resulting in an unreliable adjudication.  *Id*. at 479, 485 (the *Stone* Court cited various circuit courts employing this rationale, and the Court ultimately determined that judicial integrity does not require suppression of illegally obtained evidence).  The *Stone* Court conceded that judicial integrity has been advanced as a justification for the exclusionary rule, but the primary purpose of the exclusionary rule is to deter government actors from conducting unreasonable searches and seizures.  *Id*. at 484 citing *Mapp v. Ohio*, 376 U.S. 643, 658 (1961) ("The *Mapp* Majority justified the application of the rule to the States on several grounds, but relied principally upon the belief that exclusion would deter future unlawful police conduct."); *Elkins v. U.S.*, 80 S.Ct. 206, 217 (1960).  Following *Mapp*, the Court endorsed the exclusionary rule as a deterrent tool.  *Id*. quoting *United States v. Calandra*, supra, 414 U.S. at 338, 348 (1974) ("the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . .").  The *Stone* Court conjectured that the deterrent effect must be the primary reason for the exclusionary rule because, if judicial integrity were the justification: unconstitutionally seized evidence would have to be excluded even if the defendant assented to its introduction; standing would not be a requirement to challenge admissibility of evidence; illegally seized evidence could not be used in grand jury proceedings; and a defendant could not be impeached with illegally seized evidence.  *Id*. at 485-86.  The Court noted that none of these results are true.  *Id*. citing *Henry v. Mississippi*, 379 U.S. 443 (1965); *Alderman v. United States*, 394 U.S. 165 (1969); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Frisbie v. Collins*, 342 U.S. 519 (1952); *Calandra*, 414 U.S. at 338; *Walder v. United States*, 347 U.S. 62 (1954).  The *Stone* Court stated that "the physical evidence sought to be excluded is typically reliable and often the

-15-

most probative information bearing on the guilt or innocence of the defendant."  *Id*. at 490 quoting *Kaufman v. U.S.*, 394 U.S. 217, 237 (Black, J., dissenting)("A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty").  Therefore, allowing illegally obtained evidence does not compromise the integrity of the judicial process in most cases.  *Id*. at 491.

The *Stone* Court determined that, since the exclusionary rule was not a function of judicial integrity and writs of habeas corpus are, then the determinative question is whether applying the exclusionary rule in habeas corpus proceedings will further deter illegal searches and seizures.  *Id*. at 493.  The Court concluded that reviewing potential Fourth Amendment violations in habeas corpus proceedings will have no substantial deterrent effect because law enforcement authorities generally will not "fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal."  *Id*.  Moreover, any incremental benefit in deterring illegal police behavior that is gained by reviewing searches and seizures in habeas corpus proceedings is outweighed by the burden it will place on the criminal justice system.  *Id*.  Consequently, Fourth Amendment claims are not cognizable in habeas corpus proceedings unless the petitioner has been denied a full and fair opportunity to litigate his claim. *Id*. at 469, 482, 494-95.

### (ii)  The Sixth Circuit employs a two-step inquiry for determining whether a petitioner had a full and fair opportunity to litigate his claim.

The Sixth Circuit Court of Appeals uses a two-step inquiry in order to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim

in state court:  "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000) (internal quotations omitted); *Riley v. Gray*, 674 F.2d 522, 527 (6th Cir. 1982).

In the abstract, Ohio's mechanism for resolution of Fourth Amendment claims is adequate.  *Riley*, 674 F.2d at 526.  Therefore, the determinative questions in the case at bar are: (1) whether a procedural mechanism failed in Petitioner's case; and (2) whether Petitioner's presentation of his Fourth Amendment claim was frustrated as a result of that failure.  In order to determine whether a procedural mechanism failed, the Court must determine if the state court took cognizance of the claim and ruled in light thereof.  *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).  In *Machacek,* the Sixth Circuit Court of Appeals held that there was no failure of a procedural mechanism when the state courts had provided an evidentiary hearing outside of the presence of the jury and an appellate court decision that was based upon a review of the record.  213 F.3d at 951-52.

Based on the facts of the case at bar and existing Sixth Circuit precedent, the undersigned finds that there was no failure of Ohio's procedural mechanism in this case because: Petitioner was able to file a motion to suppress evidence along with a memorandum in support; the trial court held an evidentiary hearing; Petitioner's attorney made an opening statement; the state presented evidence to meet its burden of establishing reasonableness; Petitioner's attorney had an opportunity to cross-examine the state's witness; Petitioner himself provided a list of questions to defense counsel, who asked the questions during cross

-17-

examination; Petitioner's attorney made a closing argument; after the suppression motion was overruled, Petitioner appealed the decision to the Ohio Court of Appeals; and the Court of Appeals reviewed the trial court's application of law *de novo*. Moreover, both the trial court and the Court of Appeals issued memorandum opinions articulating their rationale. Since there was no failure of the Ohio courts' procedural mechanisms, no further inquiry is necessary. Accordingly, the undersigned recommends that the Court dismiss the Grounds One and Two of the petition with prejudice.

### B.      GROUND THREE IS WITHOUT MERIT

In Ground Three of the instant petition, Petitioner claims that his attorney violated his Sixth Amendment right to counsel because he failed to raise his "privacy right claim in the Third District Court of Appeals of Hancock County." ECF Dkt. #1. The only argument Petitioner sets forth is that "on May 13, 2004 the plaintiff's right to the Fourth Amendment of the U.S. Constitution was grossly violated by Sgt. Sean D. Young and officer Dale Cupp of the Findlay, Ohio Police Department. However, this fact has been misplaced by lack of effective counsel." ECF Dkt. #8 at 3.

In *Strickland v. Washington*, the U.S. Supreme Court held that, in order to establish the ineffective assistance of trial counsel, a defendant must show deficient performance by counsel and that the deficiency prejudiced the defense. 466 U.S. 668, 687 (1984). In order to establish deficient performance, a defendant must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. After establishing deficient performance, a defendant must show that the deficient performance prejudiced his defense, that is, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable." *Id.* at 687.  It is insufficient for a defendant to show merely that the errors had some conceivable effect on the outcome of the proceeding as every action or inaction of counsel could have such an impact.  *Id.* at 693.  He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694-695.  While a petitioner bears the burden of establishing both deficient performance and prejudice, the court need not conduct an analysis under both prongs and may dispose of a claim based on a failure to carry either burden.  *Id*. at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

The *Strickland* standard also applies to the performance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 397 (1985).  The U.S. Supreme Court has stated it is important for appellate counsel to "winnow out weaker arguments on appeal and focus on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  In *Smith v. Murray*, the U.S. Supreme Court deemed the ability to discern worthy claims from unworthy ones as the "hallmark of effective appellate advocacy."  477 U.S. 527, 536 (1986).  Only when the ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome.  *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).  In the case at bar, Petitioner's appellate counsel should receive deference in regard to his choice of claims to pursue.  Petitioner has simply stated that counsel failed to present a "privacy right claim."  ECF Dkt. #1 at 6.  It is unclear what exactly that claim would be.  Petitioner's brief primarily argues that Sergeant Young and Officer Cupp conducted an improper search of Petitioner's person after Officer Deeter effected a traffic stop.  ECF Dkt. #8 at 3-7.  Again, it is

unclear if Petitioner's argument is intended to support his first two grounds of relief based upon violations of the Fourth Amendment or his third ground of relief based upon ineffective assistance of appellate counsel.  The Court should find his ineffective counsel claim to be without merit because Petitioner has failed to allege a sufficient factual basis for questioning counsel's performance.  Petitioner's assertion leaves the Court to speculate as to what legal claim Petitioner believes his attorney should have raised.  Consequently, Petitioner has failed to carry his burden, and the Court should dismiss Ground Three of the petition with prejudice.

Even assuming that Petitioner meant that his counsel was ineffective for failing to raise the issues Petitioner raised in his brief in support of the instant petition, the Court should still find his claim to be without merit because he has failed to establish prejudice.  Petitioner claims that the officers went beyond the permissible scope of *Terry* when they searched his person for drugs rather than weapons.  ECF Dkt. #8 at 3-7.  Petitioner was not prejudiced by counsel's choice not to pursue this claim because the claim is legally and factually weak.  Evidence of a crime is not necessarily improperly obtained simply because the officers conducted a warrantless search in excess of the scope of *Terry*.  Officers may properly conduct more invasive searches for evidence of a crime when they have probable cause to believe that a person has committed a crime in the officer's presence.  *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (holding that an arrest was appropriate where the officer had probable cause to believe the defendant had possessed cocaine in the officer's presence).  Warrantless searches are also  appropriate when accompanied by exigent circumstances.  *See U.S. V. Jeffers*, 342 U.S. 48, 51 (1951).  Officer Deeter had effected a traffic stop based on consistencies between his observations and information Detective Huber had provided indicating Petitioner was

selling crack cocaine.  Ecf Dkt. #12, Ex. 3 at 3. Moreover, Officer Deeter had seen Petitioner in the company of someone Officer Deeter knew to be a drug dealer.  *Id*.  Following the stop, Petitioner consented to a search of his vehicle where crack cocaine was found.  *Id*.  Then, Sergeant Young searched Petitioner and found crack cocaine.  *Id*.  This evidence weighs heavily in favor of a determination that the police were justified in searching Petitioner's person upon the belief that he had committed a crime in their presence.  The trial court also found that Petitioner attempted to flee the scene of the traffic stop.  *Id*. at 4.   Therefore, the officers were also likely justified in searching Petitioner because of exigent circumstances.  Petitioner, on the other hand, has presented only an unpersuasive, legally incomplete argument in attempt to meet his burden.  Based upon the evidence indicating that Petitioner likely had drugs in his possession while in the presence of a police officer and the fact that Petitioner had attempted to flee the scene, the Court should not find that Petitioner has been prejudiced by his counsel's choice not to raise the issue on appeal because there is no reasonable probability that the outcome of the suppression hearing would have been any different if that argument had been presented.  Consequently, the undersigned recommends dismissing Ground Three of the petition with prejudice.

## VI.   CONCLUSION AND RECOMMENDATION

   For the foregoing reasons, the undersigned recommends that the Court find: (1) Grounds One and Two of the petition are foreclosed under federal law, since Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims; and (2) Ground Three of the petition is without merit because Petitioner has failed to carry his burden of showing that counsel committed a prejudicial error.  Consequently, the undersigned recommends that the

Court dismiss the instant petition with prejudice.


Date: October 15, 2007                                    _____*/s/George J. Limbert*_____
                                                         George J. Limbert
                                                         United States Magistrate Judge



     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-22-